No. 23-5755, 23-5756

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

———————————

**UNITED STATES OF AMERICA**,
*Plaintiff—Appellee,*

*v.*

**BRIAN KELSEY**,
*Defendant—Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION
THE HONORABLE WAVERLY D. CRENSHAW JR., DISTRICT CHIEF JUDGE, CASE
No. 3:21-cr-00264-1

———————————

# APPELLANT'S MOTION TO STAY MANDATE PENDING CERTIORARI PETITION TO SUPREME COURT

———————————

J. ALEX LITTLE
ZACHARY C. LAWSON
LITSON PLLC
54 Music Square E, Suite 300
Nashville, TN 37203

*Counsel for Appellant*

September 3, 2024

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES..........................................................................4

INTRODUCTION ...................................................................................... 6

I.    The Court improperly required Mr. Kelsey to do
      more than *Holguin-Hernandez* required................................... 6

      A.    The Court improperly required Mr. Kelsey to request
            relief ................................................................................. 7

      B.    The Court improperly required Mr. Kelsey's objection
            to be lengthy....................................................................... 9

      C.    The Court improperly required counsel to use specific
            words, conflicting with both *Holguin-Hernandez* and
            precedent from other circuits.................................…......11

II.   The Court's decision conflicts with those of other circuit
      courts on the important federal question of what one must
      say to preserve an error for appellate review.......................12

      A.    The decision conflicts with those of other circuit
            courts prior to the issuance of *Holguin-Hernandez*…...12

      B.    The Court's decision conflicts with other circuits on
            whether *Holguin-Hernandez* applies beyond the
            preservation of the issue of a sentence's
            reasonableness.................................................…......14

III.  The Supreme Court should decide whether harmless error
      is a defense to the government's breach of a plea
      agreement.................................................................…......16

IV.   The Supreme Court should decide whether a defendant's
      prior breach precludes relief under *Santobello*.....................17

## TABLE OF CONTENTS
### cont.

<u>Page No.</u>

V.    The Supreme Court should clarify which opinion in
      *Santobello* is controlling and what the correct relief is in
      a case arising from federal court…………………...…………….18

CONCLUSION…………………………………………………………………21

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                      <u>Page No.</u>

*Arizona v. Fulminante*
     499 U.S. 279 (1991) ................................................................. 16, 17

*Grutter v. Bollinger*
     539 U.S. 306 (2003) ........................................................... 19

*Holguin-Hernandez v. United States,*
     589 U.S. 169 (2020) .................................................*passim*

*Marks v. United States,*
     430 U.S. 188 (1977) ........................................................... 19

*Neder v. United States,*
     527 U.S. 1 (1999) ...................................................... 16, 17

*Puckett v. United States,*
     556 U.S. 129 (2009) ................................................. 16, 17

*Santobello v. New York,*
     404 U.S. 257 (1971) ................................................*passim*

*United States v. Abney,*
     957 F.3d 241 (D.C. Cir. 2020) .................................. 14, 15

*United States v. Bostic,*
     371 F.3d 865 (6th Cir. 2004) ........................................ 15

*United States v. Cates,*
     73 F.4th 795 (10th Cir. 2023) ....................................... 14

*United States v. Estevez Antonio,*
     311 F. App'x 679 (4th Cir. 2009) ................................... 13

# TABLE OF AUTHORITIES
## cont.

<u>CASES</u> cont.                                                    <u>Page No.</u>

*United States v. LeBlanc*,
    671 F. App'x 826 (2d Cir. 2016) ...................................................... 15

*United States v. Pizarro*,
    817 F. App'x 806 (11th Cir. 2020)................................................... 14

*United States v. Rivera*,
    682 F.3d 1223 (9th Cir. 2012) ......................................................... 10

*United States v. Rivera*,
    365 F.3d 213 (3d Cir. 2004)............................................................. 13

*United States v. Simmons*,
    587 F.3d 348 (6th Cir. 2009) ............................................................. 8

*United States v. Williams*,
    561 F.2d 859 (D.C. Cir. 1977) ........................................................ 13

<u>FEDERAL REGULATIONS AND RULES</u>

Fed. R. App. P. 41 ................................................................... 6, 21

Fed. R. Crim. P. 51(b)................................................................... 8

Fed. R. Crim. P. 52(b)................................................................... 6

S. Ct. R. 10(a)....................................................................... 6, 12

Moore's Fed. Prac. 3d § 51.03................................................... 13

Wright, *Federal Practice and Procedure*: Criminal § 842 (1969)............13

**INTRODUCTION**

Under Federal Rule of Appellate Procedure 41, this Court will issue a stay of the mandate pending the filing of a petition for writ of certiorari to the Supreme Court upon a "show[ing] that the petition would present a substantial question and that there is good cause for a stay." In deciding whether to grant a certiorari petition, the Supreme Court considers whether an appellate court "has decided an important federal question in a way that conflicts with relevant decisions of [the Supreme] Court." Sup. Ct. R. 10. Appellant Brian Kelsey, relying upon this Court's concurring opinion, presents a substantial question of whether the Sixth Circuit decided the important federal question of what one must say to preserve an error for appellate review in conflict with *Holguin-Hernandez v. United States*, 589 U.S. 169 (2020). In addition, Mr. Kelsey raises a number of other substantial questions that the Supreme Court should consider on the merits of his case.

**I.    The Court improperly required Mr. Kelsey to do more than *Holguin-Hernandez* required.**

To determine whether an issue is preserved under *Holguin-Hernandez*, "[t]he question is simply whether the claimed error was 'brought to the court's attention.'" *Holguin-Hernandez*, 589 U.S. at 174

(*quoting* Fed. R. Crim. Proc. 52(b)). This Court's majority opinion improperly added to this minimal standard in various ways.

### A.    The Court improperly required Mr. Kelsey to request relief.

As the Supreme Court explained, "[e]rrors [must be] brought to the court's attention in one of these two ways": "a party may . . . 'inform[] the court . . . of [1] the action the party wishes the court to take, or [2] the party's objection to the court's action and the grounds for that objection.'" *Holguin-Hernandez*, 589 U.S. at 170-71 (*quoting* Fed. R. Crim. Proc. 51(b)). Here, Mr. Kelsey's counsel conceded that he did not do the former. (Reply Br. 33.) But in analyzing whether he accomplished the latter—stated an objection and its grounds—this Court improperly considered whether he did the former. *Kelsey*, Nos. 23-5755/5756 at 9, attached as Exhibit 1 ("Op."). It stated that counsel did not allow the district court to "correct any potential improprieties" because "counsel never requested any relief from the district judge and never raised what he thought should happen in light of the government's purported breach." (*Id*.) But the majority is wrong that "counsel's lack of follow-up" "fail[ed] to prompt the district court to make necessary findings." (*Id*.) For "[o]nce a defendant disputes a particular issue, the district court becomes

obligated to find any facts that are essential to the clarity of the record." *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009). By requiring counsel to request relief, the Court improperly added to the standard set forth by *Holguin-Hernandez*. In essence, it required the defendant to meet *both* of Rule 51's requirements, instead of just one.

By contrast, the concurring opinion stated the correct proposition of law: "A criminal defendant preserves a claimed error by 'informing the court' of either the action he 'wishes the court to take' or his 'objection to the court's action and the grounds for that objection.'" (Op. at 13.) (*quoting* Fed. R. Crim. P. 51(b)). Because it utilized the correct proposition of law, it reached the correct conclusion: "Kelsey brought to the court's attention both his objection—that the government 'violated the plea agreement'—and the grounds for that objection—that 'it sure sounds like they're advocating for those two points, and they can't do that.'" (Op. at 13.) Unlike the majority opinion, the concurrence made no mention of whether Mr. Kelsey's counsel also requested relief from the error brought to the district court's attention, because there was no need to. This burden the majority added to the defendant was not only unnecessary but also contrary to binding Supreme Court precedent. At

the very least, Mr. Kelsey—and the concurring opinion—have shown that Mr. Kelsey raises a substantial question whether the Court decided an important question in conflict with Supreme Court precedent.

### B. The Court improperly required Mr. Kelsey's objection to be lengthy.

A second burden the Court added to the *Holguin-Hernandez* standard is that the objection be lengthy. Twice, the Court mentions that the objection was deficient because it occurred in only a "brief exchange." (Op. at 9, 10.) But *Holguin-Hernandez* does not require that an objection be lengthy. As long as the error is "brought to the court's attention," it does not matter how long the objection is. A proper objection and grounds can be stated in as few as two words, for example: "Objection. Hearsay." In this case, the exchange encompassed 59 words:

COUNSEL:      Your Honor, I think the government's come pretty close to violating the plea agreement. It sure sounds like they're advocating for those two points, and they can't do that.

COURT:        Well, I asked him what he thought.

COUNSEL:      I understand, Your Honor. But if you ask him to violate the plea agreement, it doesn't mean he doesn't violate the plea agreement.

(R.157, Sent. H'rg Tr., PageID #1145.) This extended exchange more than "brought" the error "to the court's attention." Not only did counsel state the "objection—that the government 'violated the plea agreement'—and the grounds for that objection—that 'it sure sounds like they're advocating for those two points, and they can't do that,'" (Op. at 13, Kethledge, J., concurring) (quoting trial counsel), but also counsel went above and beyond the requirements of *Holguin-Hernandez* by disagreeing with the district court's rejection of his objection. He was not "required to point out possible errors in the decision after it had already been made," *United States v. Rivera*, 682 F.3d 1223, 1234 (9th Cir. 2012), but he did just that. Given counsel's third mention of the government "violat[ing] the plea agreement," it was improper for the Court to characterize the objection as only a "brief exchange" because length does not legally matter. By mentioning the length of the interaction at all, in contravention to the concurrence's and *Holguin-Hernandez*'s silence on length or brevity, the Court placed another improper burden on the Supreme Court's standard. At the very least, Mr. Kelsey has raised a substantial question that the Court decided this important question in conflict with Supreme Court precedent.

**C.    The Court improperly required counsel to use specific words, conflicting with both *Holguin-Hernandez* and precedent from other circuits.**

Three times, the Court mentioned that "counsel never stated that the government actually breached the agreement." (Op. at 9); *see also* (Op. at 8) (counsel "never said that the government breached the agreement"); (Op. at 8) (counsel did "not [state] that the government had in fact breached the plea agreement.") While the Court mentioned *Holguin-Hernandez*'s statement that an objecting party need not use any "particular language," (Op. at 7), its actions conflicted with the Supreme Court's ruling.

It was not necessary to say the exact phrase, "the government breached the agreement" for counsel to "bring to the court's attention" the issue whether the government breached the agreement. Counsel used a myriad of other words to bring the issue to the court's attention. Most prominently, he said "they can't do that." (R.157, Page ID #1145.) It was undisputed that everyone understood that "they" meant "the prosecutors" and "that" meant "advocate for the obstruction of justice enhancement." And all parties understood that defense counsel believed "they" could not do "that" for a specific reason: because it would "violat[e]

the plea agreement," a phrase which he used three times. (*Id.*) So the combination of all 59 words of the exchange made clear to the district court, as the concurring opinion explained, that "Kelsey brought to the court's attention both his objection . . . and the grounds for that objection." (Op. at 13.) And the reason the concurring opinion reached the correct result was that it followed the Supreme Court's holding that an objecting party need not "use any particular language." *Holguin-Hernandez*, 589 U.S. at 174. Mr. Kelsey has raised a substantial question that the majority opinion did not reach the correct result, in conflict with Supreme Court precedent.

## II. The Court's decision conflicts with those of other circuit courts on the important federal question of what one must say to preserve an error for appellate review.

The Supreme Court also grants review on certiorari in cases in which "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter." S. Ct. R. 10(a).

### A. The decision conflicts with those of other circuit courts prior to the issuance of *Holguin-Hernandez*.

Even before *Holguin-Hernandez*, other circuit courts did not require objecting parties to use particular language to adequately lodge

12

an objection: "Compliance with Rule 51 does not require 'surgical precision.'" *United States v. Rivera*, 365 F.3d 213, 214 (3d Cir. 2004) (*quoting* Moore's Fed. Prac. 3d § 51.03). In *Rivera*, although counsel did not preserve his claim "expertly," he did so "adequately." *Id.* In *United States v. Estevez Antonio*, the Fourth Circuit did not require a specific phrase to be used to preserve the objection; rather, it considered counsel's words "taken together." 311 F. App'x 679, 682 (4th Cir. 2009). But here, the Court did require surgical precision by mandating that an exact phrase be used: "the government violated the plea agreement." And it did not take counsel's words together; it omitted any analysis of the pivotal second sentence that "they can't do that."

As other circuits put it, courts should look to "substance" over "form." *United States v. Williams*, 561 F.2d 859, 863 (D.C. Cir. 1977). Regarding Rule 51, the D.C. Circuit said, "[w]e ought not apply this rule in a ritualistic fashion. Where, as here, the problem has been brought to the attention of the court, and the court has indicated in no uncertain terms what its views are, to require a further objection would exalt form over substance." (*Id.*) (*quoting* Wright, *Federal Practice and Procedure*: Criminal § 842 (1969)). Because the present case required that the

objection be made in a particular form, instead of looking to the substance of it, Mr. Kelsey has raised a substantial question that the Sixth Circuit decision conflicts with both of these lines of cases from other circuit courts.

**B.    The Court's decision conflicts with other circuits on whether *Holguin-Hernandez* applies beyond the preservation of the issue of a sentence's reasonableness.**

The decision conflicts with at least three other circuit court decisions which applied *Holguin-Hernandez* to cases that did not involve the issue of whether the sentence was substantively unreasonable. *See United States v. Cates*, 73 F.4th 795, 809 (10th Cir. 2023); *United States v. Abney*, 957 F.3d 241, 248 (D.C. Cir. 2020); *United States v. Pizarro*, 817 F. App'x 806, 809-10 (11th Cir. 2020). All three cases quoted the *Holguin-Hernandez* standard that, to be preserved, an error must only be "brought to the court's attention." The Tenth Circuit applied that standard to a discovery issue in *Cates*. The Eleventh Circuit applied it to an obstruction of justice enhancement in *Pizarro*. And the D.C. Circuit applied it to the right to allocute in *Abney*. This Court mentioned the standard but, in practice, it improperly limited the holding of *Holguin-Hernandez* to cases in which defendants challenged the reasonableness of their sentence, as

the Sixth Circuit has done in previous cases. In *Abney*, the defendant asked only, "May I say something?" 957 F.3d at 245. Yet the D.C. Circuit found that question sufficient to preserve the issue of not being able to allocute. This clearly represents a different understanding of what it means to bring an error to the court's attention.

Here, the Court improperly relied upon precedent that is questionable after the Supreme Court's ruling in *Holguin-Hernandez*. Saying that the objection was "too abbreviated and sufficiently ambivalent," citing *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980), or that it was "not specific," citing *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004), is not reconcilable with the Supreme Court's ruling that no specific words are required and that the error need only be "brought to the court's attention." Even more clearly, the decision here conflicts with *Abney*, in which the D.C. Circuit Court found that a very *abbreviated* and *non-specific* objection, "May I say something?" was adequate to preserve the error after the issuance of *Holguin-Hernandez*. At the very least, Mr. Kelsey raises a substantial question whether the Supreme Court should clarify the reach of its holding in *Holguin-Hernandez*.

### III. The Supreme Court should decide whether harmless error is a defense to the government's breach of a plea agreement.

Mr. Kelsey has made a showing that his certiorari petition would present a substantial question that *de novo* review should apply and that the Supreme Court should reach the merits of his case, which raises a number of other substantial questions on review. The first is whether harmless error should apply.

In *Santobello v. New York*, 404 U.S. 257 (1971), a case decided on *de novo* review, the Supreme Court precluded a harmless error defense. There, the Court ordered relief for the government's breach of a plea agreement even though the sentencing judge had "stated that the prosecutor's recommendation did not influence him." *Id.* at 262-63.

But in *Puckett v. United States*, 556 U.S. 129 (2009), the Court expressed a question as to whether harmless error was still precluded from an analysis of a plea breach under *de novo* review. Because *Puckett* was decided on plain error review, it left for another day the question of whether it should revisit *Santobello*'s holding on this point: "We need not confront today the question whether *Santobello*'s automatic-reversal rule has survived our recent elaboration of harmless-error principles in such cases as *Fulminante* and *Neder*." *Id.* at 141, n. 3 (citing *Arizona v.*

*Fulminante*, 499 U.S. 279 (1991), and *Neder v. United States*, 527 U.S. 1 (1999).

Because the Supreme Court itself raised this question as a substantial one, Mr. Kelsey has made a showing that his petition also would raise a substantial question on this point.

## IV. The Supreme Court should decide whether a defendant's prior breach precludes relief under *Santobello.*

Another issue raised by the government in Mr. Kelsey's case is that a defendant may not obtain relief from a breach of a plea agreement when the defendant breached the agreement earlier. (Gov't Br. 57-61.) Mr. Kelsey did not breach the agreement. (Reply Br. 22, n. 4). And even if he had, the government waived any alleged breach; therefore, both parties were still bound by the terms of the agreement. (Reply Br. 21-24.) However, Mr. Kelsey acknowledges that there is precedent from other circuits that is confusing on this point.

Once again, the Supreme Court raised the question itself in *Puckett*:

Indeed, in this case the Government might well have argued that it was excused from its obligation to assert "demonstrated acceptance of responsibility" because Puckett's ongoing criminal conduct hindered performance. See 13 Williston § 39.3 (4th ed. 2000). That argument might have convinced us had it been pressed, but the Government

conceded the breach, and we analyze the case as it comes to us.

556 U.S. at 140, n. 2. Because the Supreme Court itself raised this question as a substantial one, Mr. Kelsey has, once again, made a showing that his certiorari petition also would raise a substantial question on this point.

## V.    The Supreme Court should clarify which opinion in *Santobello* is controlling and what the correct relief is in a case arising from federal court.

Mr. Kelsey raises a substantial question regarding what the correct relief is under *Santobello*. He claims that Justice Douglas's concurrence controls. (Reply Br. 37.) But the government quotes from the majority opinion on the question of remedy. (Gov't Br. 62.) The Supreme Court should clarify which *Santobello* opinion controls.

*Santobello* was essentially a 3-3-1 decision on the issue of remedy. 404 U.S. at 268, n.*. Three Justices took the position that the government advocates: the district court has full discretion to determine remedy. *Id.* at 263. Another three Justices stated that the defendant's preference should be granted absolutely. *Id.* at 268-69. And Justice Douglas ruled that the district court must give defendant's preference "considerable, if not controlling, weight." *Id.* at 267. Therefore, Justice Douglas's opinion

should be controlling. But Justice Douglas also joined the majority opinion.

In the past, to answer this question, the Supreme Court has applied its *Marks* analysis: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." *Marks v. United States*, 430 U.S. 188, 193 (1997). In *Santobello*, that would be Justice Douglas's concurrence. But courts have erroneously continued to quote from the majority opinion of *Santobello*, even on the question of remedy, over which Justice Douglas clearly split from the majority opinion.

And in more recent years, the Supreme Court has acknowledged the difficulty of applying the *Marks* approach in some cases. For example, in *Grutter v. Bollinger,* the Supreme Court observed, "[i]t does not seem useful to pursue the *Marks* inquiry to the utmost logical possibility when it has so obviously baffled and divided the lower courts that have considered it." 539 U.S. 306, 325 (2003). But the Court has never overruled *Marks*. Therefore, this case presents chances for the high court

to clarify its precedent on two important substantial questions: (1) Which opinion from *Santobello* is controlling on remedy? and (2) How does one determine which opinion controls in a plurality opinion? In other words, is *Marks* still good law?

There is a third substantial question on remedy raised in this case: Should the appellate court give the defendant his preference of remedy or remand to the trial judge to decide the remedy in a case arising out of federal court? In *Santobello*, Justice Douglas, while disagreeing with the majority on whether the deciding court should consider the defendant's preference of remedy, agreed with the majority that the case should be sent back to the trial court for issuance of the remedy. 404 U.S. at 266-67. But his hesitation in not agreeing with the minority that the deciding court should give the defendant's preference absolute weight is not present in this case. There, he reasoned, "[t]his is a state case over which we have no 'supervisory' jurisdiction"; therefore, "the state court will decide" the remedy. (*Id*.) But this case is federal, and the Supreme Court and courts of appeals *do* have supervisory jurisdiction, so under Justice Douglas's reasoning, they *should* instruct the district court to grant the remedy that the defendant prefers.

At the very least, Mr. Kelsey has shown that his petition presents three substantial questions about what the remedy should be under *Santobello* in a case arising from federal court.

## CONCLUSION

Mr. Kelsey has shown that his petition for writ of certiorari to the Supreme Court would present several substantial questions, which constitute good cause for a stay. In furtherance of good cause, Mr. Kelsey has lived under the conditions of pre-trial release for nearly three years without a violation, so his continued release for 90 days would not prejudice any other party. For those reasons, this Court should grant his motion, under Federal Rule of Appellate Procedure 41, and issue an order to stay the mandate in this case for 90 days, pending the consideration of a petition for a writ of certiorari in the Supreme Court.

Respectfully submitted,

By:    /s/ J. Alex Little
　　　　J. ALEX LITTLE (TN BPR #029858)
　　　　ZACHARY LAWSON (TN BPR #036092)
　　　　LITSON PLLC
　　　　54 Music Square E, Suite 300
　　　　Nashville, TN 37203
　　　　Telephone: (615) 985-8189
　　　　alex@litson.co
　　　　zack@litson.co

　　　　*Counsel for Brian Kelsey*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND STYLE REQUIREMENTS

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,266 words according to the Microsoft Word 2016 word processing program, excluding the parts of the brief exempted by the Fed. R. App. P. 32(f).

Per Fed. R. App. P. 27(d)(1)(E), this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Century Schoolbook font.

By:     */s/ J. Alex Little*
        J. Alex Little
        *Counsel for Brian Kelsey*

Dated: September 3, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I served this brief on all counsel of record through the Court's CM/ECF system on September 3, 2024.


By:    */s/ J. Alex Little*
J. Alex Little
*Counsel for Brian Kelsey*