No. 23-5755, 23-5756

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff—Appellee,*

*v.*

BRIAN KELSEY,
*Defendant—Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION
THE HONORABLE WAVERLY D. CRENSHAW JR., DISTRICT CHIEF JUDGE
CASE NO. 3:21-cr-00264-1

## APPELLANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION TO STAY MANDATE PENDING *CERTIORARI*

KENT WICKER
WICKER/BRAMMELL PLLC
323 West Main Street
11th Floor
Louisville, Kentucky 40202

J. ALEX LITTLE
ZACHARY C. LAWSON
LITSON PLLC
5400 Music Square E
Suite 300
Nashville, TN 37203

*Counsel for Appellant*

October 15, 2024

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ..................................................................4

INTRODUCTION ....................................................................................8

BACKGROUND ......................................................................................9

ARGUMENT ...........................................................................................14

    I.     Motions for Reconsideration are disfavored. ...........................14

    II.    Mr. Kelsey presented several substantial questions on which this Court correctly relied to grant the motion to stay the mandate……………………………………………….……16

          A.    It is a substantial question whether the majority opinion conflicted with *Holguin-Hernandez* and other circuits applying it……………………………………..................17

          B.    Mr. Kelsey's motion to stay also presented substantial questions involving the government's breach of a plea agreement under *Santobello*, regarding harmless error, prior breach, and proper remedy………..……….…......20

          C.    These additional substantial questions were raised in the parties' briefing in this case………..…….…..…...23

    III.    Mr. Kelsey presents no risk of flight or danger to the community……………..…………………………………...24

    IV.    The balance of the equities of irreparable harm favors Mr. Kelsey…………..……………………………….........26

    V.    There is no reason to rush to imprison Mr. Kelsey for conduct that this Court opined, *en banc*, in another case soon likely will be found by the Supreme Court to be protected Free Speech. ………………………………………………………….....29

CONCLUSION………………………………………………………32

# TABLE OF CONTENTS (cont.)

Page No.

CERTIFICATE OF COMPLIANCE................................................34

CERTIFICATE OF SERVICE.......................................................35

# TABLE OF AUTHORITIES

<u>CASES</u>                                                      <u>Page No.</u>

*Arizona v. Fulminante,*
    499 U.S. 279 (1991)...................................................................20-21

*Bakari v. Beyer,*
    870 F. Supp. 85 (D. N.J. 1994).................................................14-15

*Baker v. Chandler,*
    No. 23-5015, 2024 U.S. App. LEXIS 7085 (6th Cir. Mar. 25, 2024)
    .......................................................................................................16

*Bethel v. Bobby,*
    No. 2:10-cv-391, 2024 U.S. Dist. LEXIS 343 (S.D. Ohio Jan. 2,
    2024)..............................................................................................14

*Diamond v. PSEA,*
    No. 20-1383, (S. Ct. 2020) ...........................................................28

*FEC v. Colo. Republican Fed. Campaign Comm. ("Colorado II"),*
    533 U.S. 431 (2001)..................................................................30-32

*FEC v. Ted Cruz for Senate,*
    596 U.S. 289 (2022)..................................................................30-31

*Few v. UTLA,*
    No. 21-1395, (S. Ct. 2021) ...........................................................28

*Grossman v. HGEA,*
    No. 21-597, (S. Ct. 2021) .............................................................28

*Grutter v. Bollinger,*
    539 U.S. 306 (2003).......................................................................22

*Hendrickson v. AFSCME,*
    No. 20-1606, (S. Ct. 2020) ...........................................................28

# TABLE OF AUTHORITIES (cont.)

CASES (cont.)                                                        Page No.

*Holguin-Hernandez v. United States,*
    589 U.S. 169 (2020)..........................................................8, 17-19, 24

*Hollingsworth v. Perry,*
    558 U.S. 183 (2010)........................................................26

*In Re August, 1993 Regular Grand Jury,*
    854 F. Supp. 1403 (S.D. Ind. 1994)................................14

*La Riccia v. Cleveland Clinic Found.,*
    No. 21-3990, 2022 U.S. App. LEXIS 2479 (6th Cir. Jan. 26, 2022)
    ..............................................................................16

*Lebron v. Nat'l R.R. Passenger Corp.,*
    513 U.S. 374 (1995)........................................................23

*Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.,*
    590 F.3d 381 (6th Cir. 2009)..........................................15

*Marks v. United States,*
    430 U.S. 188 (1977)........................................................21

*McCutcheon v. FEC,*
    572 U.S. 185 (2014)........................................................30

*Miller v. Stovall,*
    641 F. Supp. 2d 657 (E.D. Mich. 2009) .....................26-27

*National Republican Senatorial Committee v. Federal Election Commission,*
    No. 24-3051, 2024 WL 4052976 (6th Cir. Sept. 5, 2024) (*en banc*)
    ..............................................................................30-32

*Neder v. United States,*
    527 U.S. 1 (1999)...........................................................20-21

# TABLE OF AUTHORITIES (cont.)

CASES (cont.)                                                                   Page No.

*Newman v. Metrish,*
    300 F. App'x. 342 (6th Cir. 2008) ................................................... 27

*Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.,*
    904 F. Supp. 644 (N.D. Ohio 1995) .......................................... 14, 15

*Puckett v. United States,*
    556 U.S. 129 (2009) ................................................................. 20-21

*Santobello v. New York,*
    404 U.S. 257 (1971) ................................................................. 20-22

*Schaszberger v. AFSCME,*
    No. 22-373, (S. Ct. 2022) .............................................................. 28

*United States v. Abney,*
    957 F.3d 241 (D.C. Cir. 2020) ...................................................... 19

*United States v. Bostic,*
    371 F.3d 865 (6th Cir. 2004) ........................................................ 19

*United States v. Cates,*
    73 F.4th 795 (10th Cir. 2023) ....................................................... 19

*United States v. Estevez Antonio,*
    311 F. App'x 679 (4th Cir. 2009) .................................................. 18

*United States v. LeBlanc,*
    671 F. App'x 826 (2d Cir. 2016) ................................................... 19

*United States v. Lundergan,*
    Case No. 5:18-cr-00106 (E.D. Ky. Jan. 25, 2021) .......................... 27

*United States v. Pizarro,*
    817 F. App'x 806 (11th Cir. 2020) ................................................ 19

# TABLE OF AUTHORITIES (cont.)

<u>CASES</u> (cont.)                                                    <u>Page No.</u>

*United States v. Prater,*
    766 F.3d 501 (6th Cir. 2014) ...........................................................12

*United States v. Rivera,*
    365 F.3d 213 (3d Cir. 2004) ............................................................18

*United States v. Sweet,*
    630 F.3d 477 (6th Cir. 2011) ...........................................................27

*United States v. Williams,*
    561 F.2d 859 (D.C. Cir. 1977) ........................................................19

*Wolf v. UPTE,*
    No. 21-612, (S. Ct. 2021) ................................................................28


<u>STATUTES AND RULES</u>

52 U.S.C. § 30116.............................................................................30

Fed. R. App. P. 41 ...........................................................................16

Fed. R. Crim. P. 51..........................................................................17-18

Fed. R. Crim. P. 52..........................................................................17

S. Ct. R. 10 .....................................................................................17, 18


<u>TREATISES</u>

Moore's Fed. Prac. 3d § 51.03 .........................................................18

Wright, *Federal Practice and Procedure*: Criminal § 842 (1969)...........19

## INTRODUCTION

This panel should deny the government's motion for reconsideration of the stay of the mandate pending *certiorari* petition to the Supreme Court because the defendant—and the judge concurring in the panel opinion—present a substantial question that the majority opinion conflicts with *Holguin-Hernandez v. United States*, 589 U.S. 169, 174 (2020).

Mr. Kelsey also presented several other substantial questions in his motion to stay the mandate, and this Court correctly relied on those substantial questions when it granted the stay. For finality in its orders and conservation of judicial resources, this Court should disfavor all motions for reconsideration. And this motion, in particular, also should be denied because it fails to identify a singular misapprehension or oversight of law or fact.

In addition, Mr. Kelsey shows good cause for a stay because he poses no risk of flight or danger to the community, as the district court already found in granting him release pending appeal. In fact, even the conduct that he pled guilty to was recently found, in another case decided

by this Court *en banc*, likely soon to be recognized by the Supreme Court as protected Free Speech.

## BACKGROUND

Brian Kelsey was a practicing attorney who served as a state lawmaker from 2004 to 2022. In 2016, he ran for an open seat in the U.S. House of Representatives, and he finished fourth in the primary. Five years later, after a change in administrations, the Department of Justice revived a dormant investigation and indicted Mr. Kelsey and co-defendant, Joshua Smith.

The charges related to several donations of campaign funds that, absent any direction from Mr. Kelsey, are legal and were publicly reported on the internet. (R.146, PageID #1008-09.) Mr. Kelsey donated roughly $106,000 from his state reelection account to Smith's state political action committee. (R.73, PageID #211.) On the advice of counsel, he told Smith, "You can spend [these funds] however you want." (R.131-2, PageID #771.) Some of the funds ended up with the American Conservative Union ("ACU"), a prominent political nonprofit, and ACU reported to the Federal Election Commission ("FEC") independent

expenditures of roughly $80,000 worth of radio advertisements supporting Mr. Kelsey's congressional race. (R.73, PageID #213-14.) In the government's view, because ACU's expenditures were allegedly coordinated with Kelsey, these were direct contributions to his federal campaign above the federal contribution limits.

Ultimately, Mr. Kelsey executed a plea agreement with the government in which he agreed only that certain donations occurred at his "implicit direction." *Id.* at 206-222. Mr. Kelsey later moved to withdraw his plea and asked the district court for permission to move to dismiss. (R.93, PageID #285.) He explained that he had pleaded guilty to something that is not a crime because the First Amendment protected the conduct of coordinating campaign expenditures. (R.93-1, PageID #305-334.) He also argued that he had entered the plea with an unsure heart and confused mind, shortly after his twin sons were born and while his father was on his deathbed. (R.93, PageID #297-98.)

The district court held a hearing on the motion to withdraw, (R.114, PageID #458), but denied the motion, (R.116, PageID #460), and the case proceeded to sentencing. Although the plea agreement barred the government from advocating for any enhancements not explicitly listed,

it advocated at sentencing that he should receive a two-level enhancement for obstruction of justice because certain statements by Mr. Kelsey at his withdrawal hearing allegedly "were perjurious and support application of the two-level enhancement." (R.157, PageID #1144-45.) When it did, as the government put it, defense counsel immediately "spr[a]ng[] up", (Gov't Br., Doc. 18, at 22), and raised alarm to the court that the government had advocated in a manner contrary to the plea agreement: "The government's come pretty close to violating the plea agreement. It sure sounds like they're advocating for those two points, and they can't do that." (R.157, PageID #1145.) The district court rejected the objection and provided its grounds for doing so: "Well, I asked him what he thought." *Id*. Even so, defense counsel raised the issue again: "I understand, Your Honor. But if you ask him to violate the plea agreement, it doesn't mean he doesn't violate the plea agreement." *Id*.

Nonetheless, the district court adopted the government's position, and it applied an obstruction enhancement.[1] The district court sentenced

---

[1] The district court found, however, that the perjurious statements were the ones in which Mr. Kelsey "was not truthful when he told the Court that he was, in fact, guilty." *Id*. at #1150. The legal implications of the district court's finding that it was false for Mr. Kelsey to say he was guilty are not before this Court at this time.

Mr. Kelsey to 21 months' imprisonment on each count to run concurrently, followed by three years of supervised release. (R.155, PageID #1103-05.)

## This Court's Opinion

Mr. Kelsey appealed to this Court on the sole issue that he was entitled to rescission of his plea agreement and a trial because the government had breached the agreement. (Opening Br., Doc. 14, at 2.)

This Court issued a split opinion. The concurring opinion found that defense counsel properly objected to the government's breach of the plea agreement. *Id*. It also recognized that the district court's rejection of the objection—because it had asked the government a question—was the same argument the government had telegraphed in its position on the PSR, (R.135, PageID #795), and the same argument the government made to this Court as to why it did not breach—because it could answer the question. (Gov't Br. 42.) As the concurring opinion concluded, "[H]ere the district court 'clearly understood the basis for this objection and addressed it.'" (Op. 13.) (quoting *United States v. Prater*, 766 F.3d 501, 507 (6th Cir. 2014)).

In contrast, the majority opinion held that Mr. Kelsey's defense counsel "failed to object adequately" because he used the phrase "'pretty close to violating the plea agreement'" in his first sentence. (Op. 8) (quoting trial counsel). But it failed to analyze his crucial second sentence, in which he said, "they can't do that." Therefore, it mistakenly concluded that counsel never communicated that "the government breached the agreement." *Id*. at 8-9. It waived away counsel's words, including the third sentence, as mere "remarking on the government's conduct" but offered no explanation as to why counsel would be remarking at all, if not to object to the impropriety of the government's conduct. *Id*. at 9.

Thus, instead of applying *de novo* review, as did the concurring opinion, it applied plain error review and did not find the government's breach to reach the level of plain error. *Id*. at 10-12. It found, "Both parties appear to recognize that there is at least some uncertainty about the government's obligations under Kelsey's agreement, even if Kelsey has the better reading of the agreement." *Id*. at 12.

*Order Granting a Stay of the Mandate*

Mr. Kelsey filed a Petition for Rehearing *en banc*, (Doc. 34), but the petition was denied, (Doc. 35-1). He next filed a Motion to Stay the Mandate Pending *Certiorari* Petition to the Supreme Court. (Doc. 36.) This Court granted the motion. (Doc. 38.) But then the government filed a Motion for Reconsideration. (Doc. 39.) For the reasons set forth below, Mr. Kelsey files this Response in Opposition.

## ARGUMENT

## I.   Motions for Reconsideration are disfavored.

Motions for reconsideration are "'extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged.'" *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995) (quoting *In Re August, 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1406 (S.D. Ind. 1994)). Courts "disfavor motions for reconsideration because they consume a court's scarce time for attention to a matter that has already been decided." *Bethel v. Bobby*, No. 2:10-cv-391, 2024 U.S. Dist. LEXIS 343, at *3 (S.D. Ohio Jan. 2, 2024). As such, "motions for reconsideration are granted 'very

sparingly.'" *Plaskon*, 904 F. Supp. at 669 (quoting *Bakari v. Beyer*, 870 F. Supp. 85, 88 (D. N.J. 1994)).

Before the Court reconsiders one of its orders, it must find "1) an intervening change of controlling law; 2) new evidence available; or 3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009). But the government did not allege an intervening change of controlling law, new evidence, clear error, or manifest injustice in the merits of the Court's earlier decision. The decision to stay the mandate was based on substantial legal questions raised by Mr. Kelsey and by the concurring opinion in the case. In its motion for reconsideration, the government alleged clear error only in *when* the Court decided—whether before or after receiving a response from the government[2]—but it did not allege clear error in *what* the Court decided. For that reason, alone, the motion should be denied.

---

[2] The government's procedural argument about when the Court issued its prior order, (Mot. for Recons., Doc. 39, at 4-5), is now moot because the government has now submitted its argument on the merits.

Stated another way, under Sixth Circuit Rule 27(g), "Reconsideration is not warranted [unless the Court] misapprehend[ed] or overlook[ed a] point of law or fact." *La Riccia v. Cleveland Clinic Found.*, No. 21-3990, 2022 U.S. App. LEXIS 2479, at *1 (6th Cir. Jan. 26, 2022). But the government failed to cite such a misapprehension or oversight. Instead, it simply argued that its arguments were better than Mr. Kelsey's: "Kelsey's arguments . . . are not persuasive." (Mot. for Recons. 8.) When, as here, a party "makes no clear attempt to identify a legal or factual flaw in [the Court's] reasoning or to otherwise undermine [its] conclusions," the motion to reconsider must be denied. *Baker v. Chandler*, No. 23-5015, 2024 U.S. App. LEXIS 7085, at *1 (6th Cir. Mar. 25, 2024).

## II. Mr. Kelsey presented several substantial questions on which this Court correctly relied to grant the motion to stay the mandate.

This Court issued a stay of the mandate pending the filing of a petition for writ of *certiorari* to the Supreme Court because Mr. Kelsey made a "show[ing] that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1).

### A. It is a substantial question whether the majority opinion conflicted with *Holguin-Hernandez* and other circuits applying it.

The main substantial question Mr. Kelsey detailed in his motion is one on which the panel split: What must one say to preserve an issue for appellate review under *Holguin-Hernandez*? (Mot. to Stay, Doc. 36, at 6-15). Mr. Kelsey relied on the concurring opinion in his case to show that the majority decided the question "in a way that conflicts with" *Holguin-Hernandez* and is, thus, ripe for Supreme Court review. S. Ct. R. 10(c). In *Holguin-Hernandez*, the Supreme Court purposefully set a very low bar for issue preservation, as mandated by the federal rules of criminal procedure: "The question is simply whether the claimed error was 'brought to the court's attention.'" 589 U.S. at 174 (quoting Fed. R. Crim. Proc. 52(b)). As the Supreme Court further explained, "The rulemakers, in promulgating Rule 51, . . . chose not to require an objecting party to use any particular language" to lodge an objection. *Id*. But the majority opinion did just that. It improperly required Mr. Kelsey to request relief. (Op. 9.) It improperly required Mr. Kelsey's objection to be lengthy. *Id*. at 9-10. And it improperly required Mr. Kelsey's counsel to use a particular phrase: "the government breached the agreement." *Id*. at 8-9.

17

By contrast, the concurring opinion found that Mr. Kelsey had properly preserved the issue: "Kelsey brought to the court's attention both his objection—that the government 'violated the plea agreement'—and the grounds for that objection—that 'it sure sounds like they're advocating for those two points, and they can't do that.'" *Id.* at 13 (quoting trial counsel).

At the very least, Mr. Kelsey—and the concurring opinion—raised a substantial question whether the majority decided the question in conflict with Supreme Court precedent.

### Conflict with Other Circuits

In addition, Mr. Kelsey's motion to stay the mandate detailed that the majority opinion interpreted *Holguin-Hernandez* "in conflict with the decision of another United States court of appeals on the same important matter," S. Ct. R. 10(a). (Mot. to Stay 12-15.) The Third Circuit does not require parties to use a particular phrase: "Compliance with Rule 51 does not require 'surgical precision.'" *United States v. Rivera*, 365 F.3d 213, 214 (3d Cir. 2004) (quoting *Moore's Fed. Prac. 3d* § 51.03). Nor does the Fourth: Counsel's words may be "taken together." *United States v. Estevez Antonio*, 311 F. App'x 679, 682 (4th Cir. 2009). Nor does the D.C.

Circuit: Courts should look to "substance" over "form." *United States v. Williams*, 561 F.2d 859, 863 (D.C. Cir. 1977) (quoting Wright, *Federal Practice and Procedure*: Criminal § 842 (1969)).

Also, Mr. Kelsey detailed at least three circuit court decisions that more broadly applied *Holguin-Hernandez* to cases that did not involve the issue of whether the sentence was substantively unreasonable. (Mot. to Stay 14.) *See United States v. Cates*, 73 F.4th 795, 809 (10th Cir. 2023) (discovery issue); *United States v. Abney*, 957 F.3d 241, 248 (D.C. Cir. 2020) (right to allocute); *United States v. Pizarro*, 817 F. App'x 806, 809-10 (11th Cir. 2020) (obstruction of justice enhancement). In *Abney*, the defendant asked only, "May I say something?" 957 F.3d at 245, a very abbreviated and non-specific objection that was sufficient to preserve the issue. That holding conflicts with the majority opinion's reliance on *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980) and *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004), for the proposition that, even after *Holguin-Hernandez*, an objection may not be abbreviated and must be specific. (Op. 8.)

At the very least, Mr. Kelsey—and the concurring opinion—raised a substantial question whether the majority decided the question in

conflict with other courts of appeals. Thus, on this issue alone, Mr. Kelsey

met his burden of showing that his petition for *certiorari* would present

a substantial question, and this Court did not misapprehend or overlook

a point of law or fact in agreeing with him.

> **B.    Mr. Kelsey's motion to stay also presented substantial questions involving the government's breach of a plea agreement under *Santobello*, regarding harmless error, prior breach, and proper remedy.**

Mr. Kelsey's motion also presented three other substantial

questions that warrant clarification from the Supreme Court: 1) whether

harmless error is a defense to the government's breach of a plea

agreement, (Mot. to Stay 16-17); 2) whether a defendant's prior breach of

an agreement precludes relief, *id.* at 17-18; and 3) which opinion controls

in *Santobello v. New York,* 404 U.S. 257 (1971), on the question of remedy

in a case arising from federal court, (Mot. to Stay 18-21).

The Supreme Court believes that the first two questions are

substantial because it mentioned them both as needing clarification in

*Puckett v. United States*, 556 U.S. 129 (2009). As the high court said

regarding the first question, "We need not confront today the question

whether *Santobello*'s automatic-reversal rule has survived our recent

elaboration of harmless-error principles in such cases as *Fulminante* and

*Neder.*" *Puckett*, 556 U.S. at 141, n. 3 (citing *Arizona v. Fulminante*, 499 U.S. 279 (1991), and *Neder v. United States*, 527 U.S. 1 (1999)). This case would allow the Supreme Court to confront the substantial question head-on.

The *Puckett* Court also raised the second question:

> Indeed, in this case the Government might well have argued that it was excused from its obligation to assert "demonstrated acceptance of responsibility" because Puckett's ongoing criminal conduct hindered performance. See 13 Williston § 39.3 (4th ed. 2000). That argument might have convinced us had it been pressed, but the Government conceded the breach, and we analyze the case as it comes to us.

556 U.S. at 140, n. 2. In this case, the government has pressed the argument. Thus, both questions have been identified by the Supreme Court as substantial.

The third question, regarding remedy under *Santobello*, has led to conflicting decisions among circuits—and even within circuits—because *Santobello* was a plurality decision, and courts have differed on which opinion controls. Traditionally, the Supreme Court has applied the *Marks* analysis, which directs lower courts to follow the opinion of the majority of justices "who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). In *Santobello*,

that would be Justice Douglas's concurrence, holding that, in a case arising from state court, the circuit court should remand the case to the district court for the defendant either to withdraw his guilty plea or to be resentenced by another judge, but the district court must give the defendant's preference "considerable, if not controlling, weight." *Santobello*, 404 U.S. at 267. But the Supreme Court has questioned *Marks. See, e.g., Grutter v. Bollinger*, 539 U.S. 306, 325 (2003). And many courts have mistakenly followed the position of the government in this case: The district court maintains full discretion to decide between the two remedies because that is what the plurality opinion says in *Santobello*.

Even if Justice Douglas's opinion does control, what is the correct remedy for a case arising from federal court? His reasoning leads to the conclusion that the defendant's preference should be given absolute weight, but the case did not bring that substantial question to the Supreme Court. This case does.

Ultimately, this case presents the Supreme Court with a case of first impression on all three of these additional, substantial questions—harmless error, prior breach, and correct remedy. Because the Supreme

Court, itself, raised these questions as substantial, Mr. Kelsey made a showing that they are substantial, and this Court did not misapprehend or overlook a point of law or fact in agreeing with him.

### C. These additional substantial questions were raised in the parties' briefing in this case.

In its motion for reconsideration, the government makes much of the fact that these additional questions were not discussed by this Court in its decision. (Mot. 10-11.) But that is not the correct standard. The Supreme Court's "traditional rule is that once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995). But even if they were so limited, all three of the additional arguments here were briefed to this Court. The government raised the issue of harmless error: "this case is particularly amenable to harmless error review." (Gov't Br., Doc. 18, at 52-53, n.11.) Both parties discussed prior breach. (Gov't Br. 57-61; Kelsey Reply Br., Doc. 24, at 14-17.) And both parties briefed what the correct remedy should be. (Gov't Br. 54-57; Kelsey Reply Br. 29-32). Therefore, these three additional substantial questions are all proper to include in a petition for *certiorari* to the Supreme Court.

Furthermore, it is undisputed that the primary substantial question raised by Mr. Kelsey in his motion to stay the mandate—whether this Court's decision conflicted with *Holguin-Hernandez*—was addressed by this Court's opinion. Therefore, in granting the stay of the mandate, this Court did not misapprehend or overlook a point of law or fact regarding whether the Supreme Court can properly address any of the substantial questions raised by Mr. Kelsey. It can.

## III. Mr. Kelsey presents no risk of flight or danger to the community.

As the district court found, it does not "believe that Kelsey presents a risk of flight." (Order Granting Release Pending Appeal, Dist. Ct. Doc. 177, at 3.) It granted Mr. Kelsey release pending his appeal to this Court. *Id.* at 8. In so doing, it chronicled the unlikelihood of Mr. Kelsey's flight:

> [T]he Court finds it far-fetched that Kelsey would decide to abscond and face significantly more time when he has a wife, a young daughter, and twin sons who recently turned one year old [now two] waiting for him at home. Going on the run with a wife and three small children in tow is even less imaginable.

*Id.* at 3-4.

The district court also found that Mr. Kelsey poses no danger to the community: "the Court has no reason to conclude that Kelsey poses a threat to the community. To the contrary, he has been released since he

was first arrested on November 1, 2021, has no prior criminal record, and has been compliant with the terms and conditions imposed by the Court while on pretrial release." *Id.* at 3. The circuit court judge who granted the motion to stay the mandate was familiar with the district court order making these findings because the government had improperly quoted from it and from the hearing prior to it in its Response Brief to the Court. *See, e.g.*, Gov't Br. 20, 25-27; Kelsey Reply Br. 24-25. Therefore, there was no misapprehension or oversight in this Court's ruling on the motion to stay.

In its motion to reconsider, the government has offered no evidence to rebut the district court findings. Its allegations of "perjury" and "gamesmanship", (Mot. 12), were well-known to the district court at the time it made its finding that Mr. Kelsey "has been compliant with the terms and conditions imposed by the Court while on pretrial release." (Dist. Ct. Doc. 177 at 3.) And at the sentencing hearing, the district court went out of its way to praise Mr. Kelsey's conduct outside that at issue in this case:

> You're a hands-on father, a devoted son, and a devoted member of -- family member to others. You have a strong commitment, as demonstrated by your actions and behavior, to both non-secular and secular nonprofit organizations. And

> your activity in those nonprofit[s] ha[s] caused an impact, a
> positive impact on children, on adults in Memphis,
> throughout Tennessee, and even internationally with your
> work in Somalia and South America.

(R.157, Page ID #1242-43.) Thus, the government has offered this Court

no reason to question the conclusion of the judge most familiar with Mr.

Kelsey's character—that he poses no danger to the community and no

risk of flight—and even provides the community and his family with

benefits.

## IV.  The balance of the equities of irreparable harm favors Mr. Kelsey.

The "balance [of] the equities" of irreparable harm favors Mr.

Kelsey because his harm will be substantial, immediate, and irreparable,

whereas the government's potential harm is redressable. *See*

*Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). If Mr. Kelsey is

ultimately successful in his appeal, he will have been irreparably harmed

by serving part of a prison sentence for a judgment that is ultimately

vacated. Any unconstitutional[3] prison sentence represents irreparable

harm: "Sixth Circuit courts hold that continued imprisonment in

---

[3] The government's breach of a plea agreement violates Due Process.
*United States v. Warren*, 8 F.4th 444, 448 (6th Cir. 2021).

violation of the United States Constitution constitutes irreparable harm." *Miller v. Stovall*, 641 F. Supp. 2d 657, 669 (E.D. Mich. 2009) (citing *Newman v. Metrish*, 300 F. App'x. 342, 344 (6th Cir. 2008)). The harm is compounded in a case like this one, in which Supreme Court consideration would take up a significant part of the sentence. In granting release pending appeal in another campaign finance case with the same sentence, the district court was "cognizant of . . . the risk that the sentence could be served in whole or in significant part before [the defendant's] appeal is decided." (Doc. 393: Mem. Op. and Order, *United States v. Lundergan*, Case No. 5:18-cr-00106 (E.D. Ky. Jan. 25, 2021)) (citing *United States v. Sweet*, 630 F.3d 477, 480 (6th Cir. 2011)). Because of that risk Mr. Kelsey has made a strong showing of irreparable harm.

In contrast, the government has identified no irreparable harm that it will suffer if the stay is left in place. It mentions that it has been "more than eight years" since the conduct at issue in the case, (Mot. 12), but it fails to mention that it is solely responsible for the first five of those years of delay. According to the Judgment, the conduct at issue terminated October 13, 2016. (R.155, PageID #1103). But the government did not indict Mr. Kelsey until over five years later, on October 22, 2021. (R.1,

PageID #1.) If Mr. Kelsey were a danger to the community, the government surely would not have waited so long to bring charges. This voluntary, five-year delay dwarfs the short, 90-day stay that the government now protests. In fact, only 42 days remain on the stay for Mr. Kelsey to file his *certiorari* petition. So this motion for reconsideration is really much ado about nothing from the government's standpoint.

Moreover, even if this Court were to consider that a short, further delay constituted harm to the government, it still would not constitute irreparable harm. If the Supreme Court denies Mr. Kelsey's appeal, he still will have to serve the entire sentence. Therefore, the government will suffer no irreparable harm at all.

Finally, from Mr. Kelsey's standpoint, his release for the next 42 days also would have a huge impact on the substance and quality of his *certiorari* petition because he has begun drafting it himself. For four years prior to his guilty plea in this case, he served as an appellate lawyer and regularly filed *certiorari* petitions to the Supreme Court. *See, e.g., Schaszberger v. AFSCME*, No. 22-373; *Few v. UTLA*, No. 21-1395; *Wolf v. UPTE*, No. 21-612; *Grossman v. HGEA*, No. 21-597; *Hendrickson v. AFSCME*, No. 20-1606; *Diamond v. PSEA*, No. 20-1383. While he is

represented by counsel and will remain so, he has vastly more experience with *certiorari* petitions than the average attorney. But if he is in prison, he will no longer have access to his computer and his Lexis account, and he will be of little help to his attorney, with whom he will have to schedule his limited contacts.[4] Therefore, his release and his being among only the 7% of federal criminal defendants represented by private counsel[5] will greatly increase the chances of his *certiorari* petition being granted. For all these reasons, the balance of the equities favors leaving this Court's stay in place.

**V.    There is no reason to rush to imprison Mr. Kelsey for conduct that this Court opined, *en banc*, in another case soon likely will be found by the Supreme Court to be protected Free Speech.**

Finally, in assessing "good cause," the Court may take note of an approaching and increasingly likely change in the law governing this case. On September 5, 2024, only days before the government filed its motion to

---

[4] He will also suffer the irreparable harm of increased legal fees if he is imprisoned and unable to contribute to the drafting.

[5] 12,432 of 187,644 from 2015-2018. Kelly Roberts Freeman, Bryce Peterson, Richard Hartley, Counsel Type in Federal Criminal Court Cases, 2015-18, *Urban Institute* (May 2022), at 12, *available at* https://www.ojp.gov/pdffiles1/bjs/grants/304552.pdf.

reconsider in this case, the *en banc* Court issued an opinion in *National Republican Senatorial Committee v. Federal Election Commission*, No. 24-3051, 2024 WL 4052976 (6th Cir. Sept. 5, 2024) (*en banc*). In that case, the Court answered a certified question from the Southern District of Ohio on whether the statute at issue here, 52 U.S.C. § 30116 of the Federal Election Campaign Act (the "Act"), violates the First Amendment to the extent it attempts to prohibit coordinated campaign expenditures between a party and a candidate. *Id.* at *1.

The opinion for the Court, by Chief Judge Sutton, recounted substantial arguments that the Supreme Court's opinions over the last twenty years have effectively overruled its opinion in *FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431 (2001) ("*Colorado II*"), which had found the provision constitutional. *Nat'l Republican Senatorial Comm.* at *1, citing *McCutcheon v. FEC*, 572 U.S. 185, 227 (2014) (plurality opinion) (striking down aggregate campaign contribution limits); *id.* at 231–32 (Thomas, J., concurring in the judgment) (would rule that all contribution limits are unconstitutional); *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 313 (2022) (striking down limitations on using campaign contributions to repay candidates' loans

to the campaign). The Court also noted the fundamental changes to political fundraising and spending since the *Colorado II* decision, including 2014 amendments to the Act that expanded the fundraising ability of political parties and the rise of unlimited spending by political action committees. *Id.* at *1. The Court stated that "[t]hese are fair points." Nevertheless, the Court ruled that it was the province of the Supreme Court to say when its decisions are overruled, not the circuit courts. *Id.* at 4.

Judge Thapar wrote separately to express his criticisms of *Colorado II* in light of the Supreme Court's later jurisprudence. He concluded that "coordinated-party-spending limits (1) punish parties for a government-created fundraising disparity, (2) target the wrong actor for anti-corruption purposes, and (3) pose a greater First Amendment burden than comparable contribution limits would. Thus, these limits are not 'closely drawn' and fail intermediate scrutiny." *Id.* at 12. Judge Bush concurred *dubitante* to "explain my doubts about the precedent that binds us. . . . I respectfully submit that it is time to read some American history, which suggests that coordinated party expenditure limits violate the First Amendment." *Id.* at 20-21. Judge Readler, dissenting, stated that

he would rule on the merits and strike down the law. *Id.* at 37.

The plaintiffs asked the Court "to rule against them 'promptly' to facilitate the higher court's review." *Id.* at 21 (Stranch, J., concurring). Clearly, *National Republican Senatorial Committee* is a case of great national importance and is appropriate for *certiorari*. The Court's opinions can be read as a convincing prediction that *Colorado II* will be overturned, and the coordination provisions will be struck down. It would work a great injustice, then, if this Court were to order that Mr. Kelsey be imprisoned while he watches his statute of conviction be struck down.

## CONCLUSION

Mr. Kelsey and the concurring opinion presented a substantial question of law worthy of review by the Supreme Court. The government failed to identify a misapprehension or oversight of law or fact in this Court's order granting a stay of the mandate. For these and other reasons, this Court should deny the government's motion for reconsideration.

Respectfully submitted,

*/s/ Kent Wicker*
Kent Wicker
Wicker / Brammell PLLC
323 West Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 780-6185
kent@wickerbrammell.com

J. ALEX LITTLE (TN BPR #029858)
ZACHARY LAWSON (TN BPR #036092)
LITSON PLLC
5400 Music Square E, Suite 300
Nashville, TN 37203
Telephone: (615) 985-8189
alex@litson.co
zack@litson.co

*Counsel for Brian Kelsey*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND STYLE REQUIREMENTS

This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,073 words according to the Microsoft Word 2016 word processing program, excluding the parts of the brief exempted by the Fed. R. App. P. 32(f).

Per Fed. R. App. P. 27(d)(1)(E), this response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Century Schoolbook font.

By:    */s/ Kent Wicker*
Kent Wicker
*Counsel for Brian Kelsey*

Dated: October 15, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I served this brief on all counsel of record through the Court's CM/ECF system on October 15, 2024.


By:    */s/ Kent Wicker*
Kent Wicker
*Counsel for Brian Kelsey*